BENJAMIN MURPHY *against* JENKINS WILLIAMS.

APPEAL *from Conway Circuit Court.*

A writ which bears date Sept. 8, 1837, and is returnable to the *next* September term is bad, and a judgment by default rendered upon it at September term, 1837, is erroneous.

There is no provision of law by which a writ can be extended beyond the second term from its date.

An entry upon the record, that " this day the parties appeared by their attorneys, and the defendant having failed to file any plea to the plaintiff's declaration, it is considered by the court that judgment is rendered against the defendant for want of a plea," is not such an appearance as makes the writ good.

In order to constitute an appearance in the legal sense of the term, there must be some substantive act done by the defendant which constitutes him a party to the suit.

An appearance of the appellant, makes him a party to the proceedings below, and he is bound to appear in the circuit court, when the case returns there, as though he had been served with a valid process.

This was an action of covenant brought by the defendant in error against the plaintiff in error upon a lost bond, stated in the declaration to be lost by time or accident; and profert was made of a record copy thereof. The writ bore date Sept. 8th, 1837, and commanded the officer to summon the defendant to appear at " the next September term," to be holden " on the fourth Monday of September next." At the September term, 1837, an interlocutory judgment was taken in the following words: " This day the parties appeared by their attorneys, and the defendant having failed to file any plea, &c.;" and at the next term the plaintiff's damages were assessed, upon a writ of enquiry, to the sum of $624; for which amount final judgment was rendered; and the defendant appealed.

FOWLER, for the appellant:

It is contended by the appellant that the declaration is wholly insufficient in law to authorize a judgment; and that the defects being matters of substance, are not cured by the judgment by default, under the statute of *jeofails*, or amendments. Vide *Hard. Rep.*, 79, 80; *Letcher* vs. *Taylor*; 2 *Bibb. Rep.* 17; 2 *Burr. Rep.* 833.

The declaration, consisting of only one count, is contradictory and repugnant to itself in its different parts; in the material allegations, for instance, in one part it alleges that the *bond is lost* by *time and accident*, &c.; in another it makes profert of the bond itself; and lastly, makes

profert of an authenticated copy thereof. Each count must be consist- LITTLE ROCK, ent with itself, and no repugnance in material paits, will be tolerated. Jan'y 1839

*Profert* is matter of *substance.* Vide *Hardin's Rep.* 64, *Scott* v. *Curd;* MURPHY *vs.* 1 *Wils. Rep.* 16. WILLIAMS.

No action at law can be sustained on a lost deed; and such aver- ment having been once made in the declaration, no subsequent profert in the same court will be permitted to cure or nullify such allegation.

The process is void. All writs should be made returnable to the *next* term after issued, except when they are issued within fifteen days of the commencement of the next term, and then they shall be made returnable to the *second* term next ensuing the date of such writ. Vide *Pope, Steele, and McCamp. Dig.* p. 314, *sec.* 4, *p.* 316, *sec.* 10. The writ, in this case is returnable to the *next* September term to be held in *September next,* after the date of the writ, which can only be con- strued to mean the *September term, A. D.* 1838, the *third* term after the issuing of the writ; consequently the interlocutory judgment by default, was rendered in the case *twelve months prior* to the time at which the writ was made returnable; and the damages assessed, and final judgment rendered *six months before* said writ was returnable. The judgment against *Murphy* is therefore erroneous, and ought to be reversed.

CUMMINS & PIKE, *contra:*

The appellee in this case contends that an action at law can be sustained upon a lost bond or covenant.

The position assumed by the appellant, is no doubt, partially sus- tained by some of the older authorities, but we shall be able to show that both the English and American courts in later days have decided differently, and otherwise settled the common law on this subject.

It is true, also, that the Supreme Court of Kentucky, in *Helm* vs. *Eastland,* 2 *Bibb,* 193; and that of Missouri, in *Edwards* vs. *McKee,* 1 *Mo. Rep.* 123, have without much reflection or examination, decided according to the older authorities, and go the full extent of sustaining the appellant's position.

It therefore becomes necessary first to examine those decisions, and to ascertain on what reason or authority they are based. The former placed its decision on two grounds. 1st, That the tearing off of the seal, or any other material alteration annulled a deed; and 2d, that

o

there can be no declaration on a bond or deed, without profert; and the appellant also assumes that profert is matter of substance. The Supreme Court of Missouri based their decision upon the case of *Read* vs. *Brookman*, 3 *T. R.* 151.

The consequences deduced by the Supreme Court of Kentucky, from the first position assumed by them, are, that as a material alteration in a deed annuls it, so that *non est factum* can be pleaded to it, much more when the deed is lost or utterly destroyed, no remedy at law can be had on it. But this position depends upon the second, and the reason given is that where the party would declare on a deed, he must make profert, and he cannot do so if the deed has ceased to be a deed by erasure or interlineation. We may, therefore, examine both portions together.

The Supreme Court of Kentucky made no very diligent examination of the authorities upon the point they were deciding; but they state that *Gilbert*, in his Law of Evidence, and *Whelpdale's* case, in 5 *Co.* 119, decide that *non est factum* may be pleaded where the seal is broken off, and they therefore assume this to be the general, broad doctrine, without any limitation or qualification.

The second resolution in *Pigot's* case, 11 *Co.* 27, is, " that when any deed is altered in a point material, by the plaintiff himself, or by any stranger, without the privity of the obligee, be it by interlineation, addition, erasing, or by drawing a pen through a line, or through the midst of any material word, the deed thereby becomes void."

In *Whelpdale's* case, 5 *Co.* 119, it is said " that in all cases where the bond was once the deed of the defendant, and afterwards, before the action brought, becomes no deed, either by erasure or addition, or other alteration of the deed; *or by breaking off the seal*, the defendant may safely plead *non est factum*, for, without question, at the time of the plea, which is the present tense, it was not his deed." And the case of *Haijwood* is mentioned, where *after non est factum* pleaded, the deed being in custody of the clerk, rats ate the label, by which the seal was fixed, and there the jury found it was defendant's deed at time of plea pleaded, and plaintiff had judgment.

The first resolution in *Pigot's* case, as found in *Rolle's Rep.* 40, is, " *Fuit resolve que un rasure on interlina d'un obligation per un estranger de un chose material fit l'obligation void, come le divulsion del seal per estranger, &c.*" See *Michael* vs. *Scockwith*, *Cro. Eliz.* 120. The case of *Haywood* above quoted will be found in *Dyer*, 59.

LITTLE
ROCK,
Jan'y 1839

MURPHY
vs.
WILLIAMS.

But the whole of this ancient doctrine, as is remarked by Sutherland, *Judge*, in 6 *Cowen*, 748, *Rees* vs. *Overbaugh*, has been materially modified, if not substantially exploded, by modern decisions.   The Supreme Court of Kentucky seem not to have been aware of this, although in one part of their opinion they refer to " a late decision in England," without taking the trouble to inform us to what particular decision they allude.

Mr. *Justice Buller*, in *Master* vs. *Miller*, 4 *T. R.* 338, considers this doctrine to have owed its origin very much, as we have stated before, to the necessity of making profert; and he remarks, that it is not universally true that a deed is destroyed by an alteration, or by tearing off the seal.   In *Palmer* 403, a deed which had erasures in it, and from which the seal was torn, was held good, it apppearing that the seal was torn off by a little boy.   So, when torn off by accident, after plea pleaded, as authorities already cited.   And he then remarks, that "in these days, I think, even if the seal were torn off before the action brought, there would be no difficulty in framing a declaration which would obviate every doubt upon that point, by stating the truth of the case."

In *Henfree* vs. *Bromly*, 6 *East.* 309, *Lord Ellenborough* decided that an alteration in an award made by the umpire after his authority was at an end, was the same *as if it were made by a stranger, a mere spoliator*; and that it would not avoid the award, any more than if *it had been obliterated or cancelled by accident.*

In *Cutts* vs. *the United States* it was held that a deed is not avoided by the seal being torn off, whether innocently or fraudulently, but it may be declared on as a subsisting deed, 1 *Gallis.* 69.   And in *Rees* vs. *Overbaugh*, 6 *Cowen* 746, the Supreme Court of New York, after reviewing all the authorities decided, that if the seal were torn off by one with whom it had been left for safe keeping, or by a stranger, it did not vitiate the deed; and this was on the express ground that the old doctrine as to profert had been exploded, and an action at law could be maintained on a bond or deed lost or destroyed.

The only case left standing, where tearing off the seal will avoid the bond, is, where it has been done by the obligee himself: and it so held in that case, not on the old doctrine, but on the ground that it is his own voluntary act, and in the nature of a surrender.

Upon the second position, the Supreme Court of Kentucky, in stating that " by a late decision in England, the courts of common law there

LITTLE
ROCK,
Jan'y 1839
MURPHY
vs.
WILLIAMS.

have *assumed* a concurrent jurisdiction in cases of this kind with the courts of equity," must have referred to the case of *Read* vs. *Brookman*. They declare it to be "no authority in Kentucky, unwarranted upon principle, a most flagrant violation of all the acknowledged forms of proceeding, and a departure from the best settled authorities." This is pretty strong language, and will appear on examination, to be mere declamation, "to round a period withal."

The Supreme Court of Missouri overrule the case of *Read* vs. *Brookman*, 3 *T. R.* 151, though, as they say, "with much diffidence." They state the facts of that case to be, that *Lord Kenyon*, in giving his opin-ion, relied almost exclusively on the reason of the thing; and on the case of *Totty* vs. *Nesbet*, which the Supreme Court of Missouri does not think sufficient to overturn the ancient established. They further say, that *Lord Kenyon* admitted the old law to be opposed to his decision; that *Ashhurst* relied on *Leyfield's* case; and that *Buller* pro-ceeded on the ground that grants, &c. may be presumed from length of time.

If we now examine the case of *Read* vs. *Brookman*, we shall find that the Missouri Tribunal must have referred to and agreed upon that case without examining it; and probably quoted it at second hand.

In that case there was a plea in bar, and demurrer to it, and it was contended that the plea in bar was bad, because it set up a deed of release, and made no profert of it, but alleged it to be lost by time and accident. The counsel in support of the demurrer quoted *Wymark's* case, 5 *Co.* 74 *b.* 75 *a*, to the point that the only two cases where profert was dispensed with, were, where the deed had been pleaded in, and remained in another court, or where it was in the possession of the adverse party. But that case merely excepts those two cases out of the common rule, and does not say that there is no other exception. *Leyfield's* case, 10 *Co.* 93 *b.* was also referred to; but, in that case, *Lord Coke* admitted that in cases of extreme necessity, profert is dis-pensed with; "in great and notorious extremities, as by casualty of fire, he may prove the deed in evidence to the jury by witnesses, that affliction be not added to affliction." *Thoresby* vs. *Sparrow*, 2 *Str.* 1186; 1 *Wils.* 16, was also relied on, but it will be found that in that case, profert was made of the original, and also that the court expressly said, as the case is reported in *Wilson*, that under that state of case the original must be produced; and added, "if any thing can be done for the plaintiff in this case, it must be by helping plaintiff *in declaring;*

*and* ⌐⌐⌐⌐, *upon proof that the original lease is lost, a copy may be given in evidence.*"

LITTLE
ROCK,
Jan'y 1839

MURPHY
vs.
WILLIAMS.

The only other case relied on was *Whitfield* vs. *Faussett*, 1 *Ves.* 337, and even there *Lord Hardwicke* said, " the loss of a deed is not always ground to come into a court of equity for relief;" and, " courts of law admit evidence of the loss of a deed, proving the loss of it, and the contents, just as a court of equity does."

On the other side were cited the case of *Totty* vs. *Nesbit*, and *Martin* vs. *Atkinson*, in each of which the court permitted the declaration to be amended, so as to show an excuse for not making profert.

The court, after a full consideration of the cases and dicta referred to, overruled the demurrer, and decided that *the authorities were not sufficient to show* that the law was, that an action at law could not be maintained on a lost bond.

*Lord Kenyon* did argue that the doctrine contended for was unreasonable, but he further said that " however unreasonable we might think it, we would not be warranted in trampling on a series of decided cases to overturn it." He says further, that he *" did not feel the weight"* of any authority adduced, except that of *Lord Hardwicke;* and that that great judge only intimated his doubts, but did not give his judicial opinion; that he stated the question to be then *sub judice* in a court of law, and therefore he would relieve in equity, because it was *doubtful* whether the law would relieve or not. And *Lord Kenyon* stated the principle to be, as is perfectly well settled, that it is not always to be inferred from a court of equity interfering, that the law can give no relief: and he further broadly stated, that where a deed is lost, it is extreme necessity, as meant by *Coke* in *Leyfield's* case. It is true that he says he would have been glad to have found one direct authority on this point in later times; but he also adds that he has heard no answer to the case of *Totty* vs. *Nesbitt*. And he finally concludes that what was supposed to be the old law, was founded on a mistake; and that the law in later times had been better adapted to general convenience.

*Ashhurst* said that if the demurrer had been warranted by a long series of precedents, he would have held himself bound by them, and adds, " but that is not the case, and the sense and reason of the thing, together with the established practice in modern times, militate strongly against it." He says further: " No case has expressly determined that this demurrer can be supported; and *Dr. Leyfield's* case rather

leaves an opening for a contrary determination." Loss by fire, in that case, he says, "is only put by way of instance; for if the deed be destroyed by any other accident, it falls within the same reason."

*Buller* said, in reference to the same case, " whenever a similar necessity exists, the same rule holds. That the case in *Vesey* is not an authority against this mode of pleading; and that courts of law had frequently before dispensed with the necessity of giving *oyer*, as where an original lease was lost. And he finally says: " *No authority is against this mode of pleading*; but on the contrary it has the sanction of modern practice, which in a case like this has great weight."

GROSE, *Judge*, dissented, but from the time of that decision, notwithstanding *Lord Hardwicke's* doubts; arising probably from his jealousy of what he considered an encroachment of the common law upon the realms of equity, the question has been at rest, and conclusively settled in England. See *Exparte Greenway*, 6 *Ves.* 812; *E. Ind. Comp.* vs. *Boddam*, 9 *Ves.* 466; *Smith et al* vs. *Woodward*, 4 *T. R.* 586; *Jevens* vs. *Harridge et ux*, 1 *Saund.* 9 a; *Doxon* vs. *Haigh et al*, 1 *Esp.* 409.

The Supreme Court of New York in *Jansen* vs. *Ball et al*, 6 *Cow.* 628, has decided in comformity with the case of *Reed* vs. *Brookman*, and so has the Supreme Court of Indiana in *Pence* vs. *Smock*, 2 *Blackf.* 316.

That a copy of an instrument required by law to be recorded, is evidence equally with the original—See *Patterson* vs. *Winn, et al*, 5 *Peters*, 232; *Wells* vs. *Wilson*, 3 *Bibb* 264; *Tebos* vs. *White*, 4 *Bibb* 42; *Sharp* vs. *Wickliffe*, 3 *Litt.* 12.

The authorities above referred to meet all the points except that with regard to the summons, and the rendering of judgment.

The summons is undoubtedly defective, but the appellant appeared in the court below, and thereby cured all defects in the original process.

Judgment by default for want of a plea, was rendered at the first term, upon service made more than fifteen, and less than thirty days before the term. The defendant is required by law to plead to the merits on or before the third day of the term. The writ is returnable to the first term, if served more than fifteen days before court; and if he is required, to plead on or before the third day, the court may of course default him if he fails to do it, or else the requisition to plead is inoperative, as the court can have no means to enforce it, nor can the defendant risk any thing by failure to plead. *Dig.* 319, 320.

The provision of law, that where the writ is served thirty days before

court, the pleadings shall be made up, and the cause tried at the first term, (*Dig.* 198) did not repeal the provisions before in force, which required the defendant to plead within the three first days, when the writ was served fifteen days before court. It only repealed the provision which allowed either party to continue at the first term, (*Dig.* 327,) and left the other provisions untouched. The defendant in this case was therefore required to plead within the three first days. If he did so he was entitled to a continuance. If he neglected it, he was in default, and liable of course to a judgment.

DICKINSON, *Judge*, delivered the opinion of the court:

This was an action of covenant brought by the appellee against the appellant on a bond to perfect title to a tract of land; the writ bearing date September the 8th, 1837; and is in the following words, viz: The State of Arkansas to the Sheriff of Conway County, greeting— You are hereby commanded to summon *Benjamin Murphy*, if he be found within your baliwick, to appear before the Judge of our Circuit Court, at the court house in the county aforesaid, on the first day of our *next* September term, it being the fourth Monday of September *next*, then and there to answer unto *Jenkins Williams* in a plea of breach of covenant, damages one thousand dollars; and that you make due return of this writ. In testimony, &c.

On the twenty-eighth day of the same month in which the writ was issued, being the September term of the court, judgment by default was entered against *Murphy*, and a writ of enquiry awarded, returnable to the May term thereof, when the damages were assessed by a jury, and judgment entered for six hundred and twenty-four dollars, from which Murphy appeals to this court.

The fourth assignment of errors, and the only one which, we deem it necessary to look into, is, that the writ of summons bears date in September, 1837, returnable to the next September term, in September next, (A. D. 1838,) and judgment was rendered by default in September, 1837. By reference to the *Arkansas Digest* page 313, it is declared that all writs issued by any courts in this State shall be made returnable to the next term after the date of such writ; this act, however, was so far modified by the general assembly, in 1833, *same Digest*, 314, as provides that where a suit is brought within fifteen days immediately preceding the term of the court in which it is issued, the writ shall be made returnable to the second

LITTLE
ROCK,
Jan'y 1839
MURPHY
vs.
WILLIAMS.
term of said court ensuing the date of the writ; but there is no provision by which a writ can be extended beyond the second term. It is evident, that where the writ, as in this instance, is returnable to the 4th Monday of September next, it has reference the term of the court to be held in 1838, more than one year from the date of the writ, nor does the appellee contend that the writ is good, but insists that the record shows that *Murphy* appeared in the court below, and thereby waived any advantage which he might have derived from such defect.

What is this statement upon which the appellee relies? On the 28th day of September, 1837, in the same month in which the writ is issued, there was an entry made on the record in the following words: " This day came the parties by their attorneys, and the defendant having failed to file any plea to the plaintiff's declaration, it is considered by the court that judgment be rendered against the defendant for want of a plea." Does this constitute an appearance; or is it binding on the defendant. The object in resorting to a court of justice, is to seek redress for some injury; to do this the act of the parties, and the act of law must co-operate. Has there been any such a co-operation in this instance as would authorize the court to proceed? In the examination of this subject we do not deem it necessary to review and trace up the mode of bringing writs as known to the common law. By our Statute actions are commenced by filing the declaration, and issuing the writ or process at the same time. The object of this process is to compel the defendant to appear in court, in order to contest the suit, and abide the determination of the law. If he fail to appear and plead within the three first days of the return term, the plaintiff may cause judgment to be entered up against him at any time during the last day of the term; which judgment shall be final, except when the damages are not liquidated and reduced to writing, in which event a writ of enquiry shall be executed at the next succeeding term after the interlocutory judgment is entered, (*Ark's Dig.* 320.) Thus we see that if the defendant does not *appear and plead*, or make an excuse for not so doing, the plaintiff has a full and adequate remedy. In order to constitute an appearance in a legal sense of the term, there must be some substantive act by the defendant that constitutes him a party to the suit. For what purpose did *Murphy* come into court? If for any ostensible purpose it ought to be shown, for it would be absurd to suppose that he presented himself in the court below simply to waive all defence and permit judgment to go against him one year before the

writ was returnable, for he neither confesses the cause of action, nor makes any defence: we are clear, therefore, that the entry made on the record, ought not to compromit the parties' rights, and that the court erred in permitting proceedings to be had against *Murphy* in this suit at the September term thereof in 1837; *Delam* vs. *Hopkins,* 1 4 *Hill's R.,* 118; *Hard. Rep.,* 169; 1 *Chitty,* 583, 710; but as the appellant has appeared here and assigned his errors, he has become a party to the proceedings, and consequently, *Murphy,* in accordance with the rule laid down in the case of *Gilbreath* vs. *Kuykendall,* is bound to appear in the circuit court, when the same proceedings will be had in this suit as though he was served with a valid process requiring his appearance there more than thirty days before the first term of the court next ensuing, to which the case is remanded.

The judgment of the Circuit Court of Conway County, is therefore hereby reversed and set aside with costs, and the case remanded to said court for further proceedings to be had therein according to law, and not inconsistent with this opinion.